IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Corine B. Jenkins, | ) | C/A No. 0:09-1653-JFA-PJG |
|---|---|---|
| Plaintiff, | ) | |
| | ) | **REPORT AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| Michael J. Astrue, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Corine B. Jenkins ("Jenkins"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On February 3, 2006, Jenkins applied for SSI and DIB. Jenkins's applications were denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on August 28, 2007 at which Jenkins appeared and testified and was represented by Eleanor Swierk, a non-attorney representative. The ALJ, after hearing the testimony of a vocational expert, issued a decision dated April 17, 2009 finding that Jenkins was not disabled.

Jenkins was thirty-four years old at the time of the ALJ's decision. She completed high school and has past relevant work experience as a dishwasher, housekeeper, "prep cook,"

PJG

cashier/stocker, and delicatessen worker. Jenkins alleges disability since May 31, 2005 stemming from a work-related back injury that occurred in April of 2005.

The ALJ made the following findings and conclusions:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since May 31, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, I find the claimant has the residual functional capacity to lift/carry 10 pounds frequently and 20 pounds occasionally, stand 6 hours in an 8 hour workday, walk 6 hours in an 8 hour workday and sit 6 hours in an 8 hour workday provided she is permitted to sit/stand at will. The claimant should not climb or crawl. Fingering with her nondominant hand should be no more than frequently.[1] Work should not include complex reading, writing or math.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant was born on October 21, 1973 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

---

[1] This manipulative restriction is included to accommodate certain aspects of her testimony rather than as a result of any specific severe impairment.



9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 31, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 11-19.)

On April 17, 2009, the Appeals Council denied Jenkins's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 2-6.) Jenkins filed this action on June 22, 2009.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829

PJG

F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775 (4th Cir. 1973).

**ISSUE**

Jenkins raises the following issue for this judicial review: "The ALJ failed to conduct a proper listing analysis at step three of the sequential evaluation process."[2] (Pl.'s Br. at 1, Docket Entry 12.)

---

[2] Jenkins also purports to reserve two additional arguments: that the ALJ failed to consider the combined effect of Jenkins's multiple impairments and conducted an improper credibility analysis. (Pl.'s Br. at 8 n.1, Docket Entry 12.) However, a plaintiff is not permitted to piecemeal her appeal. By failing to address those arguments in her brief, Jenkins is deemed to have abandoned them. See Newton v. Astrue, 559 F. Supp. 2d 662, 670-71 (E.D.N.C. 2008) (holding that an issue on appeal was abandoned when a plaintiff raised it in the introductory portion of her brief, but failed to brief the issue or present it to the court with any supporting discussion, argument, or authority); Callahan v. Barhart, 186 F. Supp. 2d 1219, 1230 n.5 (M.D. Fla. 2002) (holding that an issue raised only in a heading in the plaintiff's brief was abandoned and would not be further considered); see also Local Civil Rule 83.VII.04 DSC ("After the filing of an answer, the petitioner may file *a* written brief in the Clerk of Court's Office within thirty (30) days.") (emphasis added). Therefore, those issues will not be considered.

## DISCUSSION

**A.      The Listings Generally**

If an applicant is not working and has a severe impairment, the Commissioner must proceed to Step 3 of the sequential analysis. At this step, the Commissioner must determine whether the claimant meets the criteria of one of the Listings and is therefore presumptively disabled. The crux of Jenkins's argument on appeal is that the ALJ should have found that Jenkins's overall medical condition meets the criteria of Listing 12.05C.

"For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. §§ 404.1525(d), 416.925(d). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. §§ 404.1508, 416.908. The Commissioner can also determine that the claimant's impairments are medically equivalent to a Listing, which occurs when an impairment is at least equal in severity and duration to the criteria of a Listing. 20 C.F.R. §§ 404.1526(a), 416.926(a). There are three ways to establish medical equivalence: (1) if the claimant has an impairment found in the Listings but does not exhibit one or more of the findings specified in the particular Listing or one of the findings is not as severe as specified in the particular Listing, then equivalence will be found if the claimant has "other findings related to [that] impairment that are at least of equal medical significance to the required criteria;" (2) if the claimant has an impairment not described in the Listings but the findings related to the impairment are at least of equal medical significance to those of a particular Listing;

*PJG*

or (3) if the claimant has a combination of impairments and no singular impairment meets a particular Listing but the findings related to the impairments are at least of equal medical significance to those of a Listing. 20 C.F.R. §§ 404.1526(b), 416.926(b).

**B.      Listing 12.05C**

To meet the criteria of the Listing for mental retardation, a claimant must satisfy two parts of the Listing: the requirements of the introductory paragraph, and one of four sets of additional criteria indicating the requisite level of severity.

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment *satisfies the diagnostic description in the introductory paragraph **and** any one of the four sets of criteria*, we will find that your impairment meets the listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (emphasis added); see also Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003); Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001); Hodges v. Barnhart, 276 F.3d 1265, 1268 (11th Cir. 2001).

> Section 12.05 states:
>
> Mental retardation refers to significantly subaverage general intellectual functioning *with deficits in adaptive functioning* initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

(emphasis added).

> Subsection C of Listing 12.05 additionally requires:
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]



20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05.

In assessing Listing 12.05C, the Commissioner equates the terms "additional and significant" with "severe":

> For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function[.]"

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00A.

Here, Jenkins contends that she presented evidence to the ALJ that at age fourteen she received a Verbal IQ score of 68 and at age ten she received a Verbal IQ score of 65, with a Full Scale IQ score of 68. (Tr. 159, 175-79.) Based on these scores, Jenkins requested an updated psychological consultative examination, which the ALJ found unnecessary. (Tr. 14, 159.) Jenkins argues that her severe impairment of degenerative disc disease, combined with her IQ scores, compels a finding that she meets the requirements of Listing 12.05C. She also alleges that the ALJ erroneously found that Jenkins did not testify to having difficulties related to her inability to function intellectually when in fact Jenkins testified that "she was unable to read and/or write well, attended special education classes during school, and had difficulty holding down jobs for more than three to six months at a time because she repeatedly made mistakes such as not properly balancing the cashier drawer." (Pl.'s Br. at 7-8) (citing Tr. 296-97, 301).

A review of the ALJ's decision shows that the ALJ noted Jenkins's IQ scores at age fourteen. (Tr. 14.) However, the ALJ observed that "[d]espite this, the claimant obtained a high school education and her work history includes some semi-skilled work." (Id.) Further, the ALJ found "no

PJG

evidence of the deficits in adaptive functioning required to demonstrate mental retardation." (Id.) Thus, in this case the ALJ determined, notwithstanding that Jenkins met the first part of the introductory paragraph to Listing 12.05—significantly subaverage general intellectual functioning, that Jenkins did *not* exhibit the second criterion in the introductory paragraph—the deficits in adaptive functioning.³ (See Tr. 14.) The ALJ's finding that Jenkins did not meet this element of the introductory paragraph of Listing 12.05 is supported by substantial evidence.

In determining the nature and extent of functional limitations allegedly arising out of mental impairments, the Commissioner rates the severity of the condition on the following areas of adaptive functioning: activities of daily living; social functioning; concentration, persistence, or pace; and areas of decompensation. 20 C.F.R. §§ 404.1520a, 416.920a. As stated above, the ALJ found, and the record supports, that Jenkins failed to demonstrate deficits in adaptive functioning. In reaching this finding the ALJ noted Jenkins's education and work experience and also observed the following: (1) that Jenkins married; (2) she had three children that she now raises on her own; (3) the lack of evidence in the record indicating that Jenkins "experiences any difficulty with comprehension or the ability to function in the work place or at home;" (4) the fact that her "[t]reatment records did not note any difficulty with respect to the claimant's ability to make reasoned and informed medical or personal decisions;" and (5) that no representative payee is sought, which indicates her ability to

---

³ Although the ALJ did not specifically mention the Listing number in his opinion, for the reasons that follow, the court concludes that the ALJ conducted a proper listing analysis. See Ogden v. Astrue, 597 F. Supp. 2d 626, 640-41 (N.D. W. Va. 2009) (finding that the ALJ's express consideration of the Plaintiff's medical evidence supported his finding that Plaintiff did not meet a Listing, even though he did not explicitly articulate each listing and clearly compare the criteria with Plaintiff's symptoms); Holcomb v. Astrue, C/A No. 3:08-2881, 2009 WL 4586601, *8 (D.S.C. Dec. 1, 2009) (finding the ALJ's failure to specifically address Listing 12.05 was harmless error when the Plaintiff had not shown she met the requisite criteria).

independently function and handle her finances. (Id.) Moreover, the ALJ stated that Jenkins "did not testify at the hearing that any mental issues imposed a difficulty for her in relation to work activities other than some problems with reading and math, which is accommodated by a prohibition from work involving complex reading, writing or math." (Id.)

In reply to the Commissioner's brief, Jenkins relies on her testimony that she was unable to read the newspaper (Tr. 296), that she was in special classes in school (Tr. 297), and that she was fired from several jobs because her drawer would "come up short" (Tr. 300-301). The court cannot say based upon this argument that the ALJ's decision was not supported by substantial evidence, in light of the other findings by the ALJ. There simply is no testimony or evidence anywhere in the record showing that Jenkins exhibited problems with taking care of herself, communicating, or getting along with others. Accordingly, based on the testimony and evidence (or lack thereof) discussed above, the ALJ's finding that Jenkins's mental condition did not meet the Listing for mental retardation is fully supported by substantial evidence and, therefore, should be affirmed.[4] See, e.g., Johnson v. Barnhart, 390 F.3d 1067, 1071 (8th Cir. 2004) (stating that the claimant did not display significant limitations in "adaptive functioning" partly because of his "ability to function despite a possibly limited IQ"); Miles v. Barnhart, 374 F.3d 694, 699 (8th Cir. 2004) (examining the claimant's education and daily activities in evaluating adaptive functioning in an adult mental retardation case).

---

[4] As a result, the ALJ was not required to proceed to consider the additional requirements of Listing 12.05, or in this case order a consultative psychological examination. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (under Listing 12.05, claimant must prove both the requisite subaverage intellectual functioning *and* sufficiently serious deficits in adaptive functioning in the developmental period before the other four criteria in the Listing are required to be considered); Markle, 324 F.3d at 187; Foster, 279 F.3d at 354.



**RECOMMENDATION**

For the foregoing reasons, the court finds that Jenkins has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

March 22, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).